UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Linda Lee E.,[1]<br><br>                      Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,[2] Commissioner of the Social Security Administration,<br><br>                      Defendant. | Case No.: 23cv770-LR<br><br>**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF No. 12]** |

On April 27, 2023, Linda Lee E. ("Plaintiff") file a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits. (ECF No. 1.) Now pending before the Court is the parties' "Joint Motion" seeking judicial review. (ECF No. 12 ("J. Mot.").) For the reasons discussed below, the

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] Plaintiff named Kilolo Kijakazi, who was the Acting Commissioner of Social Security when she filed her Complaint on April 17, 2023, as a Defendant in this action. (See ECF No. 1 at 1.) Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for further proceedings.

## I. PROCEDURAL BACKGROUND

On August 21, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning March 9, 2020. (ECF No. 7 ("AR")[3] at 214.) After her application was denied initially and upon reconsideration Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (Id. at 129.) An administrative hearing was held on December 14, 2021. (Id. at 75–99.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE"). (Id.)

On January 9, 2022, the ALJ issued a written decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 9, 2020, through the date of the decision. (Id. at 44–59.) The ALJ's decision became the final decision of the Commissioner on March 7, 2023, when the Appeals Council denied Plaintiff's request for review. (Id. at 1–7.) This timely civil action followed. (See ECF No. 1.)

## II. SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (See AR at 49.) At step two, the ALJ found that the Plaintiff had the following severe impairments: small bowel cancer, stage III; left hip trochanter bursitis/tendonitis; lumbar degenerative disc disease; asthma; hypertension; obesity; and a ventral hernia. (See id.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[3] "AR" refers to the Administrative Record filed on September 26, 2023. (ECF No. 7.) The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (See id. at 50.) Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform light work as defined in 20 CFR 404.15667(b) except: she cannot climb ladders, ropes, or scaffolds, but can occasionally perform all other postural activities; she requires the option to alternate between sitting and standing every hour of any one position for at least a five minute position change without going off task (i.e., from sitting or standing/walking to the opposite position); she must avoid concentrated exposure to extreme cold and pulmonary irritants such as dusts, fumes, odors, and gases; she needs easy access to a restroom; and she needs additional restroom breaks amounting to less than 10% of a work schedule.

(Id. at 51.)

At step four, the ALJ accepted and cited the VE's testimony that Plaintiff was capable of performing her past relevant work as a membership secretary as actually performed by Plaintiff and as generally performed in the national economy. (See id. at 54–55.) The ALJ then found that Plaintiff was not disabled. (See id. at 55.)

### III. DISPUTED ISSUE

As reflected in the parties' Joint Motion, Plaintiff raises two issues as the ground for reversal and remand—(1) whether the ALJ properly considered Plaintiff's subjective symptom testimony; and (2) whether the ALJ's residual functional capacity assessment lacks the support of substantial evidence. (J. Mot. at 4.)

### IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill,

874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021).  Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision.  Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels, 874 F.3d at 654 (internal quotation omitted).

Error in a social security determination is subject to a harmless error analysis.  Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012).  "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation omitted) superseded by regulation on other grounds.  The Court must "look at the record as a whole to determine whether the error alters the outcome of the case."  Id.

## V.  DISCUSSION

### A.   The ALJ's RFC Determination

Plaintiff challenges the ALJ's RFC determination that Plaintiff needs to: (1) alternate between sitting and standing every hour in any one position for at least a five-minute position change without going off task, and (2) have additional restroom breaks amounting to less than ten percent of her work schedule.  (See J. Mot. at 9–18.)  Both of these restrictions will be addressed in turn below.

//
//
//

1. **Relevant parts of the record**

   a. **Plaintiff's sit and stand restrictions**

   i. **Treatment notes**

Notes by Harrison Robinson, M.D., indicate that Plaintiff reported hip pain in November 2019. (See AR at 343.) Additional notes in the record state that Dr. Harrison suspected Plaintiff to have a "tendinopathy of [the] gluteal region," (see id. at 568), and when Dr. Harrison performed x-rays, he noted that Plaintiff did not have a fracture or dislocation of her hip, and that her soft tissue in that area appeared normal. (See id. at 343.) Plaintiff received hip injections from a rheumatologist, Somya Rao, M.D. in 2021, and reported radiating pain from her lower back to her thighs and ankles. (See, e.g., id. at 461 (noting steroid injection in hip and that pain continued to radiate).)

   ii. **Functional assessments**

In what appears to be the only functional assessment related to Plaintiff's hip pain from a treating physician, Dr. Harrison documented Plaintiff's chronic hip and back pain, as well as a gluteal tendinopathy. (See id. at 621.) Dr. Harrison concluded that Plaintiff would only be able to sit and stand or walk for a total of one hour in an eight-hour workday, and that Plaintiff could only sit and stand or walk for forty-five minutes at a time. (See id.) Dr. Harrison also concluded that Plaintiff's symptoms would render her off-task for more than twenty-five percent in an eight-hour workday. (See id.)

The state agency medical expert, A. Wong, M.D., concluded that Plaintiff could stand or walk for approximately six hours out of an eight-hour workday, and that Plaintiff could sit for about six hours in an eight-hour workday. (See id. at 107.) These findings were affirmed by another agency medical expert, S. Lee, M.D. (See id. at 119.)

   iii. **Hearing testimony**

During the administrative hearing before the ALJ, Plaintiff testified that she has constant issues with fatigue, and that she cannot sit, stand, or walk for more than an hour before she gets uncomfortable and has to move. (See id. at 91.) She testified further that she spends the majority of her time laying down, and that she frequently has to lie down

after getting up for short periods of time.  (See id.)

    **b.**  **Plaintiff's restroom breaks**

      **i.**  **Treatment notes**

  Treatment notes within the administrative record indicate that Plaintiff was diagnosed with a carcinoid bowel tumor in 2013, and had a resection of her small intestine to remove the tumor.  (See, e.g., id. at 283 (noting that Plaintiff was under the care of a physician at a cancer center).)  Plaintiff receives Lanreotide injection therapy on a monthly basis to treat the cancer, (see id. at 519), and treatment notes throughout the record note that she experiences frequent diarrhea as a result of her condition.  (See, e.g., id. at 425 ("Recently, she [complains of] worsening loose stools and diarrhea after eating. Compatible with carcinoid syndrome.").)  Plaintiff received multiple referrals to gastroenterologists, and numerous healthcare providers noted that she had chronic diarrhea and needed to take restroom breaks multiple times a day.  (See, e.g., id. at 579–80 (noting chronic diarrhea and that Plaintiff had lost weight due to diarrhea in August 2021); id. at 321 (containing Dr. Robinson's note that Plaintiff had loose stools up to five times per day); id. at 369 (containing Dr. Eisenberg's November, 6 2020 note that Plaintiff had intermittent nausea and diarrhea three-to-six times per day).)  However,, the administrative record in this case does not contain any records from physicians assessing functional limitations related to Plaintiff's diarrhea symptoms.

      **ii.**  **Hearing testimony**

  During the administrative hearing, Plaintiff stated that her diarrhea symptoms significantly worsened starting in April 2020, especially after eating.  (See id. at 88–89.) She explained that she would have to frequently leave her workstation and take an unscheduled break to use the restroom.  (See id. at 89.)  Plaintiff noted that she had been taking between two and three unscheduled restroom breaks per day until she stopped working, and that the Lanreotide injections continued to worsen her condition.  (See id.) Plaintiff testified that she typically used the restroom between five and twelve times per day.  (See id. at 90.)

### c. The ALJ's decision

In formulating Plaintiff's RFC, the ALJ rejected Dr. Robinson's November 16, 2021 functional assessment, reasoning as follows:

> In determining the claimant's residual functional capacity, the undersigned does not find persuasive the functional assessment dated November 16, 2021 submitted by Harrison Robinson, M.D., the claimant's treating doctor [AR at 621]. Dr. Robinson indicated that the claimant could only sit, stand or walk for no more than 1 hour cumulatively in an 8-hour workday due to fatigue and frequent doctor visits. The opinion is overly restrictive and inconsistent with the largely benign physical examination findings and the claimant's response to treatment, as summarized above in this decision. The statement also provides no objective or clinical findings in support of the less-than-sedentary residual functional capacity.

(Id. at 54.) Additionally, the ALJ found the opinions of state agency medical consultant, Drs. Wong and Lee, generally persuasive:

> The undersigned finds generally persuasive the full range of light work assessed by the State agency medical consultants [AR at 100–09, 111–23]. Their opinions are consistent with the objective evidence at the hearing level, which shows that while the claimant has complaints of fatigue and bowel issues, they are not to [the] extent alleged. Her bowel symptoms were reported to be intermittent and manageable, as noted in the record and discussed above. The undersigned also notes that while complaints of fatigue were present in the record, the evidence does not convey that the symptoms are as excessive as she claims. In adopting a range of light work and assessing additional limitations in the claimant's residual functional capacity, the undersigned has taken into account the claimant's largely routine follow-up care and the generally benign objective physical findings throughout the record, as well as generally considered the claimant's subjective complaints of pain, fatigue, and bowel problems. Greater limitations are not warranted based on the record at the hearing level.

(Id.) In addition to the restrictions attendant with light work assessed by the state agency medical experts, the ALJ's RFC determination added the requirement that Plaintiff have: (1) "the option to alternate between sitting and standing every hour of any one position for at least a 5 minute position change without going off task (i.e., from sitting or

standing/walking to the opposite position)," and (2) "easy access to a restroom; and she needs additional restroom breaks amounting to less than 10% of a work-schedule." (Id. at 51.)

**2.      The parties' arguments**

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence in assessing her RFC, rendering the ALJ's RFC determination unsupported by substantial evidence. (See J. Mot. at 17.) Noting that none of the physicians' opinions in the record support the requirements regarding Plaintiff's position restrictions and restroom breaks, Plaintiff contends that the ALJ reached these requirements through his own lay interpretation of the medical data in the record—something he was not permitted to do under Ninth Circuit caselaw. (See id. at 19 (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)).) In support, Plaintiff cites multiple cases in which courts within the Ninth Circuit have concluded that limitations within an RFC determination were unsupported by substantial evidence when they were not explicitly contemplated by medical evidence within the record. (See id. at 18 (citing de Gutierrez v. Saul, Case No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020)).) Plaintiff maintains that without a medical opinion to support the functional limitations in his decision, the ALJ's RFC determination was not supported by substantial evidence. (See id.)

Defendant responds that the RFC determination need not exactly mirror a particular medical opinion within the administrative record to be legally sufficient. (See id. at 20.) Noting that the ALJ considered "Plaintiff's allegations and the nonmedical source statements alongside the objective medical evidence, [and] the opinions and observations by medical doctors in this case," Defendant contends that the evidence in this case "supported a finding that Plaintiff could perform within the limited range of light work the ALJ found she could do." (Id. at 22 (internal quotations omitted).) Defendant contends that ALJs are presumed to be able to reject particular medical opinions, as well as independently review and form conclusions about medical evidence

in forming a claimant's RFC. (See id. at 21 (citing Farlow v. Kijakazi, 53 F.4th 485, 488–89 (9th Cir. 2022).) Defendant further argues that "the fact that the ALJ declined to defer to any one piece of evidence shows the ALJ carefully exercised his duty to fully examine the record and assess an RFC finding that was consistent with the evidence as a whole." (Id. at 23.)

### 3. Applicable law

An RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (noting that the RFC reflects current "physical and mental capabilities"); SSR 96-8p, 1996 WL 374184, at *2. Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record. See id.; see also 20 C.F.R. § 416.945(a)(3) (explaining that an RFC determination must be "based on all of the relevant medical and other evidence.").

The RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

The ALJ must include all of a claimant's impairments in the RFC assessment. 20 C.F.R. §§ 404.1545, 416.945; see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d

1219, 1228 (9th Cir. 2009).  Because the assessment of a claimant's RFC is essential to steps four and five of the sequential analysis in determining whether a claimant can still work despite severe medical impairments, an improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, 1996 WL 374184, at *4.  Accordingly, "an RFC that fails to take into account a claimant's limitations is defective."  Valentine v. Comm'r. of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); see also Martin v. Comm'r of Soc. Sec. Admin., 472 F. App'x 580, 580 (9th Cir. 2012) (concluding that the ALJ erred in formulating RFC by failing to incorporate medical opinion of claimant's work limitations without providing specific and legitimate reasons for doing so and finding VE's testimony based on flawed RFC that had no evidentiary value).  In determining whether an ALJ committed error in assessing the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r of Soc. Sec. Admin., 433 F. App'x 507, 509 (9th Cir. 2011) (concluding that the ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).

    4.  **Analysis**

    As noted above, the ALJ rejected Dr. Robinson's functional assessment—the only medical opinion in the record that discussed Plaintiff's sit and stand restrictions—as overly restrictive and inconsistent with the findings of Plaintiff's physical examinations within the record.  (See AR at 54.)  In addition to rejecting Plaintiff's sit and stand restrictions assessed by Dr. Robinson, the ALJ appears to have assessed RFC requirements that are not reflected in any of the medical opinions in the record.  The ALJ included requirements that Plaintiff have "the option to alternate between sitting and standing every hour of any one position for at least a 5 minute position change without

going off task," "easy access to a restroom[,] and . . . additional restroom breaks" in his RFC assessment. (Id. at 51.) Neither Dr. Robinson's assessment that Plaintiff could sit and stand for an hour a day (see, id. at 621), nor the state agency medical consultants' assessments that Plaintiff could perform a full range of light work with no position restrictions (see id. at 100–09; 111–23) include these position alternation and restroom requirements. The ALJ's RFC findings are also inconsistent with the objective findings by doctors who evaluated Plaintiff. For example, while multiple doctors discussed Plaintiff's diarrhea symptoms, including the symptom's frequency throughout the day, none of doctors within the record discuss these symptoms in the context of functional limitations. (See, e.g., id. at 579–80 (noting chronic diarrhea).) The same is true for Plaintiff's position restrictions—while multiple doctors discussed Plaintiff's issues with fatigue and pain in her hips and back, none of the examination findings supported the ALJ's RFC findings with respect to these symptoms' functional limitations.[4] (See, e.g., id. at 461 (discussing pain in Plaintiff's hip).)

      Defendant correctly points out that an RFC determination does not need to be based on (or mirror precisely) a single medical opinion. (See J. Mot. at 20); see also Blake R. v. Kijakazi, Case No. 3:20-cv-01759-AHG, 2022 WL 4553125, at *7 (S.D. Cal. Sept. 29, 2022) (quoting Donna M. v. Saul, Case No. ED CV 18-2554-SP, 2020 WL 1550212, at *5 (C.D. Cal. Mar. 31, 2020)) ("An ALJ must consider opinions from medical sources, but is not required to adopt verbatim a medical opinion because the RFC determination is ultimately reserved to the Commissioner"); Althoff-Gromer v. Comm'r Soc. Sec., Case No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) ("The ALJ's RFC determination need not precisely reflect any particular medical

---

[4] The only portion of the record that appears to be consistent with the ALJ's RFC determination that Plaintiff has the option to alternate between sitting and standing every hour for a five-minute position change is Plaintiff's testimony about her own restrictions during the administrative hearing. (See AR at 91 ("I can't sit, stand, walk any of those things maybe I can get an hour of doing it and then I get uncomfortable and I have to move.").)

provider's assessment). Courts have regularly concluded that RFC determinations that deviate slightly from specific medical findings or synthesize findings from the record can be supported by substantial evidence. See, e.g., Wasson v. Kijakazi, Case No. 2:22-cv-00484-NJK, 2022 WL 14577078, at *5 (D. Nev. Oct. 25, 2022) ("Here, however, the ALJ adopted many of the recommendations contained in the medical opinion evidence. To the extent that the RFC determination did not match Dr. Melamed's recommendations, the ALJ provided specific and legitimate reasons for the variances. An ALJ's RFC determination need not specifically match a physician's recommended limitations."). Nevertheless, an ALJ is not permitted to render his own medical opinions or independently assess clinical findings. See de Gutierrez, 2020 WL 5701019, at *5 (citing Tackett v. Apfel, 180 F.3d 1094, 1102–03 (9th Cir. 1999)) ("It is well-settled than an ALJ may not render her own medical opinion and is not empowered to independently assess clinical findings."); Miller v. Astrue, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (concluding that an ALJ may not act as his own medical expert); Padilla v. Astrue, 541 F. Supp. 1102, 1106 (C.D. Cal. 2008) (concluding that the ALJ was not qualified to extrapolate functional limitations from raw medical data); Banks v. Barnhardt, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (citing Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("'[the ALJ] must not succumb to the temptation to play doctor and make [his] own independent medical findings.'").

      The record in this case does not contain any medical opinions that assess how Plaintiff's ability to work was impacted by her diarrhea symptoms. Although the ALJ reasoned that Plaintiff had reported that her diarrhea symptoms were "intermittent and manageable," (see AR at 54 (citing id. at 553)), no medical opinion in the record discusses how these symptoms translated into functional restrictions in an eight-hour workday such that Plaintiff would be off-task less than ten percent of the time. Likewise, it is unclear how, apart from relying exclusively on Plaintiff's statements that she needed to switch postural positions every hour, (see id. at 51), the ALJ arrived at the conclusion that Plaintiff needs "the option to alternate between sitting and standing every hour of any

one position for at least a 5 minute position change without going off task." (Id.)  The ALJ failed to cite to any medical opinions that concluded or supported the inference that Plaintiff could comply with these restrictions.  Rather than synthesize medical opinions within the record, or cite findings in the record that would support such restrictions, it appears that the ALJ's assessed RFC limitations at issue were derived from the ALJ's "own exploration and assessment" of Plaintiff's functional limitations.  See McAnally v. Berryhill, Case No. 3:18-cv-02272-GPC-RNB, 2020 WL 1443734, at *7 (S.D. Cal. Mar. 25, 2020) (quoting Day, 522 F.2d at 1156) (internal quotations omitted).  The ALJ was not permitted to do this under Ninth Circuit caselaw.  See, e.g., Freda G. v. Saul, Case No. 5:18-cv-00694-AFM, 2019 WL 2568398 at *4 (C.D. Cal June 20, 2019) (citing Nguyen, 172 F.3d at 35) ("An ALJ . . . is 'not qualified to interpret raw medical data in functional terms.'"); Nathaniel William L. v. Comm'r of Soc. Sec. Admin., Case No. 3:21-cv-01776-JR, 2024 WL 620343, at *2 (D. Or. Feb. 14, 2024) (citing Tackett, 180 F.3d at 1102–03) ("It is well-established than an ALJ's decision must be supported by substantial evidence . . . This means that ALJs cannot properly rely on their own lay knowledge to make medical interpretations of examination results or to determine the severity of medically determinable impairments."); Pulido v. Berryhill, Case No. 1:17-cv-0884-JLT, 2018 WL 4773109, at *6, *8 (E.D. Cal. Oct. 2, 2018) (rejecting the ALJ's findings that "restriction to light work was appropriate" and that the Plaintiff could "occasionally reach overhead with the left upper extremity" where there was no medical opinion to support such limitations).  On this record, the Court concludes that the ALJ's RFC determination was unsupported by substantial evidence.[5]  The ALJ's conclusions

---

[5] As Plaintiff appears to recognize in her portion of the Joint Motion, there are several ways that the ALJ could have reconciled the discrepancy between his conclusions about Plaintiff's functional limitations and the lack of any medical opinions to support those functional limitations.  (See J. Mot. at 20.) Among these are the option to call a medical expert to testify during the administrative hearing, as well as the ability to remand the matter for further evaluation by state agency medical experts.  (See id.) Although any of these options are a viable way to develop the record with respect to the lack of opinions

around the functional limitations of Plaintiff's symptoms regarding her unscheduled bathroom breaks and postural position changes lack the support of medical opinions or examination findings.  Thus, there is insufficient evidence that these limitations affect Plaintiff's impairments.

Further, the Court concludes that the ALJ's error was not harmless.  During the administrative hearing, the ALJ asked the VE whether someone who was off-task for less than ten percent during a workday would still be able to maintain work in the national economy.  (See AR at 96.)  The VE responded in the affirmative to this question, but noted that a restriction resulting in an individual being off-task for more than fifteen percent of an eight-hour workday would be unsustainable.  (See id. at 96–97.)  This testimony is particularly troubling given the ALJ's failure to properly support his finding with respect to the two restrictions that could result in Plaintiff being off-task more than fifteen percent during an eight-hour workday.  (See id. at 51 (concluding that: (1) Plaintiff would be off-task for less than ten percent of an eight-hour workday due to her unscheduled restroom breaks, and (2) would not be off-task at all during her postural position changes).)  Thus, it is not clear that the off-task restrictions, or indeed the RFC as a whole, would have been the same absent the ALJ's error.  See Johnson v. Saul, 848 F. App'x 703, 705–06 (9th Cir. 2021) (finding that the ALJ's decision to improperly discount doctors' proposed functional limitations based off the ALJ's evaluation of objective evidence did not constitute harmless error because it was "not 'inconsequential' to the ultimate disability determination"); see also de Gutierrez, 2020 WL 5701019, at *6 (concluding that the error was not harmless when the ALJ improperly assessed the claimant's functional limitations without the benefit of a supporting medical opinion); McAnally, 2020 WL 1443734, at *9 (same).  Accordingly, the ALJ's error was not harmless.

---

about Plaintiff's functional limitations, the Court leaves the precise mechanism of how the record should be further developed on remand to Defendant's discretion.

B. **Additional Assignments of Error**

Having concluded that the ALJ committed reversible error with respect to his RFC determination, the Court declines to address Plaintiff's remaining arguments. See, e.g., de Gutierrez, 2020 WL 5701019, at *7 (declining to address other arguments when the ALJ's RFC determination was not supported by substantial evidence)' see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[T]he Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## VI. REMAND

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985) (decision of whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the reviewing court). Whether an action is remanded for further proceedings or for an award of benefits depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the Court conducts the "three-part credit-as-true" analysis. Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Under this analysis the Court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence is true, the ALJ would be required to find the claimant is disabled on remand. See Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015).

Even if all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" Garrison, 759 F.3d at 1201. "Serious doubt" can arise when there

are "inconsistencies between [the claimant's] testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. Dominguez, 808 F.3d at 407 (quoting Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotations omitted)). The first requirement is met here based on the ALJ's harmful legal errors. As discussed above, the ALJ erred by making an RFC determination unsupported by substantial evidence.

As for the second requirement, the Ninth Circuit has held that remanding for further proceedings rather than an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." Treichler, 775 F.3d at 1101 (internal quotations and citations omitted). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2018) (citing id. at 1099). "The decision whether to remand a case for additional evidence, or to simply award benefits[,] is within the discretion of the court." Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). The Court concludes that the record is sufficiently ambiguous, making remand for an immediate payment of benefits inappropriate here. The ALJ's unsupported RFC determination deprives the Court of the ability to determine whether his conclusions were supported by substantial evidence. Accordingly, this case should be remanded for further administrative proceedings to allow for proper consideration of the evidence of record and to conduct any further necessary proceedings.

The Court concludes that the "rare circumstances that result in a direct award of benefits are not present in this case." Leon, 880 F.3d at 1047. Where—as happened here—the ALJ errs by making an RFC determination unsupported by substantial evidence, further administrative proceedings could remedy the ALJ's error, and remand is appropriate. See, e.g., McAnally, 2020 WL 1443734, at *9–10 (concluding that remand was appropriate when the ALJ's RFC determination was unsupported by

substantial evidence because he acted as his own medical expert).

## VI. CONCLUSION

For the reasons stated above, the Court **REVERSES** the final decision of the Commissioner.  The case is **REMANDED** for further proceedings to address the errors noted in this Order.

Dated:  September 10, 2024

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge